# In the United States Court of Federal Claims

No. 16-775C
(Filed: March 15, 2017)
(Re-filed: May 9, 2018)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| TETRA TECH, INC., | Post-Award Bid Protest; Technical Evaluation; Unstated Criteria. |
| *Plaintiff*, | |
| v. | |
| THE UNITED STATES, | |
| *Defendant*, | |
| and | |
| EASTERN RESEARCH GROUP, INC., | |
| *Defendant-Intervenor*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Holly A. Roth*, Washington, DC, with whom were *Lawrence P. Block*, *Elizabeth G. Leavy*, *Molly Q. Campbell*, and *Sarah S. Wronsky*, Washington, DC, for plaintiff.

*Kristin B. McGrory*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant, with whom were *Chad A. Readler*, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, *Douglas K. Mickle*, Assistant Director. *Maria S. Kavouras*, Office of General Counsel, United States Environmental Protection

---

[1] This opinion was originally issued under seal. The parties offered joint proposed redactions. We adopt the parties' proposed redactions because we find them to be appropriate. Those redactions are indicated herein with brackets.

Agency, Cincinnati, Ohio, of counsel.

*John G. Horan*, Washington, DC, for intervenor.

OPINION

BRUGGINK, *Judge*.

This is a post-award protest of a solicitation for environmental consulting support services to assist the United States Environmental Protection Agency ("EPA") with implementing the National Pollutant Discharge Elimination System ("NPDES") permit program and Clean Water Act ("CWA") regulations. Plaintiff, Tetra Tech, Inc., the incumbent contractor, challenges the EPA's award of the contract to intervenor, Eastern Research Group, Inc. ("ERG"). EPA initially awarded the contract to ERG on June 24, 2016, finding that ERG's proposal offered the best value. Tetra Tech filed the present action on June 30, 2016.[2]

The parties filed cross-motions for judgment on the administrative record in August of 2016. Before briefing was complete, the government filed a notice of corrective action on September 1, 2016, stating its intention to reconvene the technical evaluation panel ("TEP") and have the source selection official ("SSO") re-evaluate the best value determination based on the forthcoming revised consensus TEP report. After the corrective action, EPA again awarded the contract to ERG, finding that its proposal offered the best value to the government. Now pending are the parties' cross-motions for

---

[2] Plaintiff filed a separate bid protest on November 23, 2016. *See Tetra Tech v. United States*, Fed. Cl. No. 16-1659. In that complaint, plaintiff challenges EPA's issuance of work assignment number 2-10, Long-term Stormwater and Wastewater Planning Technical Assistance under a different contract held by ERG. Specifically plaintiff alleges that EPA violated the Competition in Contracting Act, 41 U.S.C. § 3301 (2012), when it issued the work assignment. Plaintiff further alleges, in the separate action, that EPA violated the voluntary stay in place in this case when it issued the work assignment. A decision in *Tetra Tech v. United States*, Fed. Cl. No. 16-1659, is being issued contemporaneously herewith.

judgment on the administrative record ("AR")[3] pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). The motions are fully briefed, and we heard oral argument on February 17, 2017. As we stated at the conclusion of oral argument, because we find that EPA's technical evaluation of the proposal was reasonable and supported by the record, we deny plaintiff's motion for judgment on the administrative record and grant defendant's and intervenor's cross-motions.

BACKGROUND

Request for Proposal No. SOL-CI-16-00012 (the "RFP" or the "solicitation") was released by EPA on March 16, 2016.[4] The Performance Work Statement ("PWS") for the RFP provided that the solicitation's purpose was

> to provide environment consulting support services to the United States Environmental Protection Agency (EPA), Office of Water (OW), Office of Wastewater Management (OWM), Water Permits Division (WPD), in amending, developing, and implementing National Pollutant Discharge Elimination System

---

[3] On August 2, 2016, plaintiff filed a motion to supplement the AR and for limited discovery. In an order entered on August 11, 2016, we granted in part and denied in part plaintiff's motion. Specifically, we directed the government to produce all documents related to EPA's evaluation of ERG's Past Performance and Corporate Experience as well as individual evaluation worksheets produced by the technical evaluation panel. We also denied plaintiff's request for limited discovery. Defendant filed the supplemental documents on August 12, 2016. Defendant later filed two motions for leave to file additional documents responsive to our August 11, 2016 order, which we granted. Then, on December 30, 2016, defendant filed a supplement to the AR, including documents relevant to the corrective action and second award decision. Defendant later filed a motion to amend the record to include six cost advisory reports relevant to the cost realism and price reasonableness analyses. Finally, on January 20, 2017, plaintiff moved to supplement the AR with e-mail correspondence from January 13, 2017 between plaintiff's and defendant's counsel. We denied plaintiff's motion on January 24, 2017.

[4] The RFP was issued in order to re-compete Contract EP-C-11-009, which was held by Tetra Tech and set to expire prior to the start of the base performance period proposed in the RFP on July 1, 2016.

> (NPDES) permits and Clean Water Act (CWA) regulations. Technical support is expected to include profession program managers, engineers, scientists, information specialists, statisticians, and administrative services with experience in NPDES permitting and CWA regulations, as well as experience and best practices to help make municipal wastewater treatment facilities more efficient and sustainable.

AR 167. The RFP contemplated a base performance period from July 1, 2016 through June 30, 2017, and four 12-month option periods.

The offerors were instructed to submit proposals in two volumes: a cost proposal and a technical proposal. The technical proposals were to be evaluated based on the following criteria, listed in order of importance: (1) Qualifications and Availability of Key Personnel; (2) Past Performance; (3) Corporate Experience; (4) Program Management Plan; and (5) Quality Management System. The EPA used the following adjectival ratings in its evaluations of all technical criteria other than Past Performance:

| Rating | Description |
|--------|-------------|
| Outstanding | Proposal meets requirements and indicates an exceptional approach and understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low. |
| Good | Proposal meets requirements and indicates a thorough approach and understanding of the requirements. Proposal contains strengths which outweigh any weaknesses. Risk of unsuccessful performance is very low. |
| Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses do not outweigh one another or will have little or no impact on contract performance. Risk of unsuccessful performance is no worse than moderate. |

| Marginal | Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements. The proposal has one or more weaknesses which are not outweighed by strengths. Risk of unsuccessful performance is high. |
| Unacceptable | Proposal does not meet requirements and contains one or more deficiencies. Proposal is unacceptable for purposes of an award. |

AR 166. Past Performance was to be evaluated using the following adjectival ratings:

| Rating | Description |
| --- | --- |
| Substantial Confidence | Based on the offeror's recent/relevant performance record, the Government has a high expectation that the offeror will successfully perform the required effort. |
| Satisfactory Confidence | Based on the offeror's recent/relevant performance record, the Government has a reasonable expectation that the offeror will successfully perform the required effort. |
| Limited Confidence | Based on the offeror's recent/relevant performance record, the Government has a low expectation that the offeror will successfully perform the required effort. |
| No Confidence | Based on the offeror's recent/relevant performance record, the Government has no expectation that the offeror will successfully perform the required effort. |
| Unknown Confidence (Neutral) | No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful confidence assessment can be reasonably assigned. |

AR 166. After evaluating the proposals, the RFP promised that the government would "make award to the responsible offeror(s) whose offer conforms to the solicitation and is most advantageous to the Government cost or other factors considered." AR 163. The RFP further provided that "all evaluation factors

other than cost or price when combined are significantly more important than cost or price." *Id.*

For Qualifications and Availability of Key Personnel, the RFP provided that the Agency would evaluate:

> A.   Demonstrated qualifications* and availability of the proposed PL-4 Program Manager
>   1.   Technical Qualifications* of the PL-4 Program Manager with the type of technical requirements covered by [the Performance Work Statement ("PWS")]
>   2.   Managerial Qualifications* of the PL-4 Program Manager with managing contracts of similar size, type, and managerial scope to the PWS
> B.   Technical Qualifications* and availability of the PL-4 Quality Assurance (QA) manager with the type of technical requirements covered by PWS
> C.   Technical Qualifications* and availability of the PL-4 Senior Engineer/Scientist(s) with the type of technical requirements covered by the PWS (no more than two Senior Engineer(s)/Scientists shall be evaluated)

> *"Qualifications" includes education, expertise, and experience.

AR 164.  For Past Performance, EPA was directed to evaluate whether the offeror had

> satisfactory or better performance on all, or at least five (5), contracts and/or subcontracts completed during the past three years (including all contracts and subcontracts currently in progress), which are similar in technical scope and complexity, size, and type to that which is anticipated in this solicitation. Factors for consideration include quality of technical work products and/or service, schedule, cost control, management, regulatory compliance, and overall performance.

AR 164. If an offeror could not provide a full record of Past Performance, it would receive a neutral rating for this category.

Corporate Experience would be evaluated through two subfactors: Corporate Technical Experience and Corporate Management Experience. For Corporate Technical experience, offerors were required to demonstrate

> corporate technical experience fulfilling the technical requirements of contracts of similar size (as measured by dollar value and level-of-effort), contract type, and technical scope as that specified in this solicitation. Experience shall be related to the tasks included in the PWS and shall specifically include experience in amending, developing, and implementing NPDES permits and CWA regulations. In addition, the offeror shall demonstrat[e] its level of experience dealing with outreach and stakeholder engagement, environmental data collection, and performing various related audits and inspections. The offeror shall also demonstrate experience in preparing scientific technical documents using sound environmental planning, scientific and engineering principles.

*Id.* For Corporate Management Experience, offerors were required to demonstrate

corporate experience in fulfilling the managerial requirements of contracts of similar size (dollar amount), type (CPFF, multi task), and technical complexity and scope to that specified in this solicitation. This experience shall be related to the tasks included in the PWS and shall specifically include experience in amending, developing, and implementing NPDES permits and CWA regulations.

*Id.*

The RFP also provided that the Agency would "perform either cost analysis or price analysis of the offeror's cost/business proposal in accordance with [Federal Acquisition Regulation ("FAR")] parts 15 and 31" and "evaluate proposals to determine contract cost or price realism." AR 163. According to the RFP, "[c]ost or price realism relates to an offeror's demonstrating that the proposed cost or price provides an adequate reflection of the offeror's understanding of the requirements of this solicitation, i.e., that the cost or price is not unrealistically low or unreasonably high." *Id.*

<u>The Initial Award Decision</u>

7

Tetra Tech and ERG were the only two offerors. Both timely submitted their cost and technical proposals in April 2016.  Following receipt of the proposals, the TEP was briefed, via memorandum, by the contracting officer, Brad Heath ("CO Heath"), regarding the procedures for evaluating the technical proposals. The memorandum notified the TEP members that they were to "evaluate proposals solely on the evaluation criteria identified in Section M and shall not compare one offer to another," and that "each member shall identify the strengths, deficiencies, significant weaknesses, and risks associated with each proposal based upon the evaluation factors and be prepared to discuss these with the rest of the TEP to determine a consensus rating." AR 2205.[5]  The memorandum further instructed that Past Performance would be evaluated by CO Heath.

After each TEP member conducted an independent analysis of the offerors' proposals, the TEP members participated in a meeting to develop a consensus rating.  The TEP chair was instructed to  compile all the strengths and weaknesses noted by the individual TEP members in order to create a document that would "serve as the basis for the discussion to be held during the consensus meeting with the panel members." AR 2218.  The TEP chair was further instructed to "ensure that the compiled documents for each offeror are displayed electronically during the meeting for the panel members and can be modified as the consensus meeting is conducted." AR 2219.  During this meeting, the individual reports were considered and adjusted to meet a consensus.  CO Heath was responsible for overseeing the meeting to ensure that the TEP members reviewed the technical proposals in accordance with the evaluation factors expressed in the solicitation.

After the meeting, the TEP Chair developed a final consensus rating for the TEP report. On April 28, 2016, the TEP Chair provided the consensus report to CO Heath. The report contained the following ratings of the offerors' proposals:

| Criteria | Title | Tetra Tech Rating | ERG Rating |
|---|---|---|---|

---

[5] The TEP members individually evaluated the proposals and then met to develop a consensus report. No individual evaluations were presented to the SSO.

| I.A.1 | Demonstrated qualifications and availability of the proposed PL-4 Program Manager (Technical Qualifications) | Good | Good |
|-------|-----|-----|-----|
| I.A.2 | Demonstrated Qualifications and availability of the proposed PL-4 Program Manager (Managerial Qualifications) | Outstanding | Outstanding |
| I.B | Technical Qualifications and availability of the PL-4 Quality Assurance (QA) Manager with the type of technical requirements covered in the PWS | Good | Outstanding |
| I.C | Technical Qualifications and availability of the PL-4 Senior Engineer/Scientist with the type of technical requirements covered by the PWS | Good | Good |
| II | Past Performance | Outstanding | Good |
| III.A | Corporate Technical Experience | Outstanding | Outstanding |
| III.B | Corporate Management Experience | Outstanding | Outstanding |
| IV.A | Program Management Plan-Performance Monitoring | Good | Good |
| IV.B | Program Management Plan-Organizational Structure | Good | Good |
| V.A | Quality Management System-Quality Management Plan | Acceptable | Acceptable |
| V.B | Quality Management Plan-Generic QAAP | Acceptable | Acceptable |

AR 4766. The presence of a rating for the Past Performance of both offerors was notable in that it was contrary to the solicitation, which required that the

9

Past Performance rating be determined by the contracting officer and provided a different adjectival rating system specific to Past Performance.

Although not a member of the TEP, CO Heath later added his Past Performance analysis to the consensus TEP report and gave both ERG and Tetra Tech a Past Performance rating of "Satisfactory Confidence." Because this addition came after the TEP members signed off on the consensus report on April 28, 2016, CO Heath decided to transpose those signatures to the final version that included his Past Performance analysis.[6] This action, in part, lead to EPA's decision to take corrective action, which is discussed below.

In May 2016, CO Heath developed Cost Advisory Reports for the two offerors. This review consisted of "a math check of the proposal, a verification that the [level-of-effort ("LOE")] hours and Other Direct Costs (ODCs) were proposed in accordance with RFP specified amounts and a verification of the direct labor and indirect rates of the contractor and each subcontractor." AR 2288. Next, the TEP Chairperson conducted a review of the offerors' cost proposals and declared that she was "comfortable with the realism of the submitted [proposals] and the reasonableness of the costs." AR 2306, 2308.

Following the TEP review, a cost realism analysis was conducted. This analysis was performed by comparing the cost elements of the proposals with the independent government cost estimate ("IGCE") and through an independent rate verification and analysis. CO Heath compared proposed direct labor rates, indirect rates, ODCs, and fixed fee for the proposals of the offerors and any subcontractors. Ultimately, the analysis found that both proposals were "realistic for the work to be performed; reflect[ed] a clear understanding of the requirements; and [were] consistent with each offeror's technical proposal." AR 2353. Tetra Tech and ERG both proposed total costs of slightly more than [     ], with ERG's proposal being [          ] than Tetra Tech's. AR 2382.

On June 24, 2016, the SSO, Noelle Mills ("SSO Mills"), issued her decision awarding the contract to ERG. The decision was made based on a best

---

[6] CO Heath notified the TEP chair that he was taking this action, saying everything in the final version of the TEP report was "basically the same with some minor editing of the reports and I also included the Past Performance sections so no further action is required on your part as I already have your signatures of concurrence." AR4398.

value analysis, taking into account the evaluated costs of the offer and the technical evaluation factors set forth in the RFP. SSO Mills noted that she considered the reports and information provided to her from the TEP, but "the award decision represents [her] own independent judgment of an assessment of the technical information, the cost or pricing data and other information brought out in the offeror's proposal." AR 2384. SSO Mills specifically noted ERG's higher technical rating and its lower price and proposed fee rate.

Tetra Tech was notified of the award to ERG on June 24, 2016. It filed its complaint in this court, on June 30, 2016, challenging the award decision. Plaintiff filed its first motion for judgment on the administrative record on August 2, 2016, and defendant and ERG filed their cross-motions on August 17, 2016. After further briefing and three supplementations to the AR, defendant filed a notice of EPA's intent to take corrective action on September 1, 2016. Defendant indicated that, during the corrective action, "the agency may review any part of the evaluations and/or analyses as they see fit," and that "[o]nce the TEP has issued its final report, the EPA will then submit the TEP report to the SSO to re-evaluate her best value determination." Def.'s Not. of Corrective Action.

Corrective Action And Second Award To ERG

As part of EPA's corrective action, it assigned a different contracting officer, Noelle Mills ("CO Mills"), and a different source selection official, Sandra Licis ("SSO Licis") to make the new award decision.[7] CO Mills sent a memorandum to the TEP members, informing them that the TEP must reconvene to re-evaluate the technical proposals of both Tetra Tech and ERG and issue a revised consensus report. Before they reconvened, CO Mills asked the TEP members to review, among other documents, the solicitation, their prior consensus ratings for Tetra Tech and ERG, and Tetra Tech's second amended complaint in this protest. For her part, CO Mills issued both a revised cost realism and price reasonableness analysis and a revised Past Performance evaluation that was included in the revised consensus TEP report. To assist with her Past Performance evaluation, the TEP gave input to CO Mills relating to the scope and complexity of the contracts identified in the proposals.

---

[7] We note that, while new to these particular roles, CO Mills and SSO Licis both played a part in the initial award decision. CO Mills gave the final approval, as source selection official, for the June 24, 2016 source selection determination, and SSO Licis provided CO Heath with review comments to assist in drafting the same. AR 2385.

The corrective action yielded no change to the adjectival ratings assigned by the TEP.  When re-evaluated by CO Mills, ERG and Tetra Tech both saw their Past Performance ratings increase from "Satisfactory Confidence" to "Substantial Confidence."  Plaintiff alleges that EPA acted irrationally while evaluating both ERG's and Tetra Tech's proposals with respect to Key Personnel, Past Performance, and Corporate Experience. Specifically, plaintiff argues that EPA arbitrarily and capriciously assigned adjectival ratings that did not relate to the strengths and weaknesses identified in both Tetra Tech's and ERG's proposals.  Plaintiff further believes that EPA applied unstated evaluation criteria while evaluating the PL-4 Program Manager position, ignored the asserted  fact that the Past Performance section of ERG's proposal did not meet the RFP's technical requirements, and otherwise relaxed the stated evaluation criteria to ERG's benefit. We discuss in more detail below the technical ratings that Tetra Tech now challenges and the justification for those ratings provided in the TEP report.

Key Personnel Evaluation

The TEP's consensus evaluation of Tetra Tech's technical proposal explains the ratings assigned to each subfactor. For Qualifications and Availability of Key Personnel subfactor I.A.1, demonstrated qualifications and availability of the proposed PL-4 Program Manager (Technical Qualifications), the evaluation noted that Tetra Tech's Program Manager, [       ], had "26 years of experience in delivering technical support, both as an employee of and as a contractor for the EPA, spending more than 20 of those years providing water quality and wastewater management support for the EPA." AR 6513. The TEP's evaluation further pointed out [                    ] "33 years of experience developing, implementing, and managing water resources protection programs" as well as his past projects and experience relevant to the PWS for this solicitation. *Id.* It went on to identify [       ] strengths in developing and implementing regulations, outreach and stakeholder engagement, data collection and management, and developing scientific and technical documents. The  revised consensus evaluation also identified one weakness: that "[t]he proposal does not demonstrate this individual's technical ability for innovation or integration with new ideas or critical issues." *Id*. Overall, the evaluation found that

> [t]he proposed program manager has notable management experience relevant to this PWS. While not specifically questioning his technical expertise, many of the projects

12

outlined in the proposal to demonstrate his technical expertise really demonstrated the technical expertise of others. There is also little there that demonstrates any real energy or innovation about the NPDES program.

AR 6514. Tetra Tech was given a "Good" rating for the Technical Qualifications subfactor. Plaintiff asks the court to focus on the criticism directed to [                    ] lack of demonstrated innovation, which it characterizes as unfair because the desirability of "innovativeness" was not called out in the solicitation as a requirement.

With regard to Qualifications and Availability of Key Personnel subfactor I.A.2, demonstrated qualifications and availability of the proposed PL-4 Program Manager (Managerial Qualifications), the consensus report noted [      ] "notable amount of contract management experience with contracts of similar size, type and managerial scope." AR 6515. The evaluation identified no weaknesses for this subfactor. Overall, the TEP found that

> [t]his individual has experienced managing multiple contracts of all sizes and scopes, of similar topics, and managing over 100 employees on diverse CWA topics in multiple locations. Under his management, there is a history of high ratings. He demonstrates management experience at multiple levels – PM, DPM, WAM, and Team Leader. He has managed contracts with multiple clients for diverse activities.

AR 6515-16. Tetra Tech was given an "Outstanding" rating for the Managerial Qualifications subfactor.

Plaintiff challenges EPA's evaluation of ERG's comparable proposed PL-4 Program Manager, [                    ]. In its consensus evaluation of [      ] under Qualifications and Availability of Key Personnel subfactor I.A.1, demonstrated qualifications and availability of the proposed PL-4 Program Manager (Technical Qualifications), the agency concluded:

> STRENGTHS: . . . [            ] has 28 years of experience supporting OW in evaluating effective options for improving the nation's water quality and has extensive and direct experience spanning nearly all PWS areas. Throughout her career, she has supported OW regulatory development and implementation,

13

personally supporting more than 10 OW rulemaking programs and more than 20 regulatory studies or petitions, including technically challenging and controversial rulemakings such as the CAFO effluent limitations guidelines (ELGs) and the recent steam electric ELGs. She currently serves as Program Manager for ERG's technical support to OWM's NPDES Vessel General Permit Program. Through this work, she has demonstrated first-hand experience addressing challenges facing OWM, including petitions, lawsuits, and regulatory and technological challenges. She understands the importance of creating legally defensible regulations, based on sound engineering judgement.

[            ] has been instrumental in developing modern tools to manage data and information, such as the ERG Comment Coding and Response System, and the DMR Pollutant Loading Tool, which manages thousands of records and provides an interface for EPA and the public to systematically search and review discharge monitoring report (DMR) data entered into the Integrated Compliance Information System–National Pollutant Discharge Elimination System (ICIS-NPDES).

[                ] has impressive skills in the areas of tool development, data systems management, climate analysis, water quality trading, and areas of sustainability such as energy and water efficiency and LEED, that could definitely infuse the NPDES program with some fresh and improved approaches.

. . .

WEAKNESSES: While [        ] has demonstrated expertise in some NPDES program areas, she is lacking knowledge and expertise in other program specific areas like CSO and pre-treatment program development and implementation. There is little demonstration of implementation of regulation programs, i.e., seems to be involved in rule development and data systems development, but not so much the delivery and improvement of programs.

There is a mismatching of title of "Centralized wastewater Treatment Performance for Nutrients," with description of POTWs (page 18). There are inconsistencies in incorrectly

> naming projects (CWTs versus POTWs for nutrient sampling)
> or not quite matching titles to projects, ("DMR [Pollutant]
> Loading Tool"). In addition, "centralized wastewater treatment"
> in the NPDES program are industrial facilities not POTWs.
> These mistakes demonstrate a misunderstanding of some key
> terms and a poor understanding of the program.

AR 6489. Overall, the TEP found that

> [       ] is impressive in the areas of tool development, data
> systems management, climate analysis, water quality trading,
> and areas of sustainability such as energy and water efficiency
> and LEED. These skills could potentially infuse the NPDES
> program with new ideas and approaches that could enhance the
> NPDES program.  While [                ] has demonstrated
> expertise in some NPDES program areas, she is lacking
> knowledge and expertise in other program specific areas like
> CSO and pre-treatment program development and
> implementation.  However, her strengths outweigh the cited
> weaknesses in these areas.

AR 6490. ERG, like Tetra Tech, was given a "Good" rating for the Technical
Qualifications subfactor. Plaintiff calls the court's attention to earlier versions
of the consensus TEP report in which [       ] is described as having
"[e]ssentially no relevant NPDES experience." AR 2863.  Plaintiff contends
that the agency's final assessment of her weaknesses was purposefully diluted
between the earlier versions and the final revised consensus version of the TEP
report.

> For [              ] Qualifications and Availability of Key Personnel
> subfactor I.A.2, demonstrated qualifications and availability of the proposed
> PL-4 Program Manager (Managerial Qualifications), the consensus report
> identified "a notable amount of contract management experience with
> contracts of similar size, type and managerial scope. She serves as ERG's Vice
> President and Program Manager." AR 6491. The evaluation further identified
> six specific instances of relevant contract management experience. It identified
> no weaknesses within this subfactor. Overall, the evaluation found that

> [                 ] brings extensive managerial qualifications
> managing contracts of similar size, type and managerial scope.

15

> She is a highly qualified manager, providing EPA with flexible and responsible leadership with multiple and sometimes competing priorities. She has demonstrated the required experience, dedication and corporate responsibility to achieve the desired results from a managerial standpoint.

AR 6492. ERG was given an "Outstanding" rating for the Managerial Qualifications subfactor.

Past Performance

Past Performance was evaluated by CO Mills. During the corrective action period, the TEP gave input to CO Mills regarding the scope and complexity of the contracts identified in Tetra Tech's and ERG's proposals. For ERG, CO Mills evaluated five contracts using the Contractor Performance Assessment Report ("CPAR"). These five cost-plus-fixed-fee ("CPFF") contracts ranged in value from $11,546,607 to $39,069,420. CO Mills also used the CPAR database to evaluate two contracts from each [ ] and [
   ]—ERG's two subcontractors that were expected to receive a subcontract in excess of $5,000,000. [




                                                                              ]." AR
6497. Plaintiff contends that this is not fully consistent with the solicitation, which requires the contracts to be "similar in technical scope and complexity, size, and type to that which is anticipated in the solicitation." AR 164.[8]

The contracts were judged based on five performance elements: quality, schedule, cost control, management, and regulatory compliance. The revised TEP consensus report combined the ratings of ERG, [                ] in the following table, which shows the number of contracts that received a particular score for each performance element:

---

[8] We note that, at the beginning of the Past Performance section in the revised consensus TEP report, CO Mills quoted the standard from the solicitation. AR 6496.

| Performance Elements | Unsatisfactory (1) | Marginal (2) | Satisfactory (3) | Very Good (4) | Exceptional (5) |
|---|---|---|---|---|---|
| Quality | [ | | | | |
| Schedule | | | | | |
| Cost Control | | | | | |
| Management | | | | | |
| Regulatory Compliance | | | | | ] |

AR 6499. CO Mills did not find any weaknesses for ERG's Past Performance. Overall, ERG received a "Substantial Confidence" rating for Past Performance.

For Tetra Tech, CO Mills evaluated seven contracts using CPAR. These seven contracts included five CPFF contracts and two IDIQ contracts with CPFF task orders and ranged in value from $8,911,751 to $107,800,000. Like ERG's contracts, Tetra Tech's evaluated contracts were selected because "[

].” AR 6521

The revised TEP consensus report combined Tetra Tech's contracts in the following table:

| Performance Elements | |
|---|---|
| | [ |
| Quality | |
| Schedule | |
| Cost Control | |
| Management | ] |

| Regulatory Compliance | [ | ] |
| --- | --- | --- |

AR 6522.  CO Mills did not find any weaknesses for Tetra Tech's Past Performance.  Like ERG, Tetra Tech received a "Substantial Confidence" rating for Past Performance.

Corporate Experience

Corporate Experience was broken down into two components: Corporate Technical Experience and Corporate Management Experience. For ERG's Corporate Technical Experience, the TEP identified numerous strengths and no weaknesses, finding that

> The ERG proposal demonstrates access to firms that not only provide high-quality technical support across the NPDES program, including NPDES permit program development, implementation, and oversight, but who can also support Agency priorities, such as working toward a sustainable future (e.g., in areas such a climate, energy, and water efficiency) and working to make a visible difference in communities (e.g., green infrastructure, environmental justice). ERG provides a comprehensive understanding of the NPDES program mission and program needs and unparalleled technical expertise to meet those needs.

AR 6501. Overall, the TEP found that ERG's proposal "is outstanding and seems to provide some opportunities for the NPDES program to expand and/or get a fresh perspective on some parts of the program." AR 6504. ERG was given an "Outstanding" rating for Corporate Technical Experience.

ERG was also given an "Outstanding" rating for Corporate Management Experience. The revised consensus TEP report explained that "ERG has managed multiple contracts of similar size, type, scope and technical complexity, including amending, developing and implementing NPDES permits and CWA regulations." AR 6505. The report found one weakness in ERG's proposal: "[e]xperience in amending, developing, and implementing NPDES permits, other than Vessel General Permit, is limited." *Id.* Overall, the TEP found that

The package demonstrates a wide variety of successfully managed projects, well within the size, scope and complexity of this PWS. It also suggests the possibility of bringing new approaches to the program, e.g., better integrating climate resilience into the program, providing better data management systems, improving training, and/or developing more effective tools to support the NPDES program.

Though the contracts are of similar size, scope and complexity, there is limited corporate management experience with amending, developing, and implementing traditional NPDES permits, other than Vessel General Permit and MS4s. Most of the rulemaking is on effluent guidelines and standards, though it also includes Sufficiently Sensitive Methods. The ERG team members complement each other and are very qualified.

AR 6505-06. ERG received a rating of "Outstanding" for both Corporate Experience components.

With respect to Tetra Tech's Corporate Technical Experience, the TEP noted that its "demonstrated corporate technical experience includes an extensive range of NPDES program development, implementation, and rulemaking support." AR 6524. Unlike ERG, the TEP identified one weakness in Tetra Tech's proposal for this component, stating that there was "a rather poor demonstration that they are positioned (or even interested) in supporting the program to meet the next generation of environmental challenges." AR 6526. Nevertheless, the TEP gave Tetra Tech a rating of "Outstanding," concluding that Tetra Tech had "notable technical competencies across most fundamental and existing areas of the NPDES program," and that they were "well-qualified to support the program to maintain the status quo." AR 6526.

Tetra Tech was also given an "Outstanding" rating for Corporate Management Experience. The TEP consensus report noted that "[s]ince 1979, Tetra Tech has managed numerous large, level-of-effort (LOE), multitask contracts for EPA's Office of Water and other federal and local clients" and that Tetra Tech's proposal "demonstrates a clear ability to adequately manage contracts of this size, type, and scope, as they've already been doing it." AR 6527. However, the following weaknesses were identified:

[t]here seems to be minimal use of subcontractors or other

19

technical expertise, even in areas where Tetra Tech does not
have notable technical expertise. It appears that a lot of their
small business efforts are for high dollar, low return efforts like
e-NOI, rather than spreading these resources across small
businesses and/or seeking out fresh expertise for projects that
might benefit from it.

*Id.*

Tetra Tech and ERG were given identical ratings for the remaining
technical factors, except for I.B, Technical Qualifications and availability of
the PL-4 Quality Assurance (QA) Manager with the type of technical
requirements covered in the PWS. For this factor, ERG was given an
"Outstanding" rating, and Tetra Tech was given a "Good" rating. Tetra Tech
does not protest the TEP's awarding ERG a higher rating for the PL-4 Quality
Assurance Manager position.

CO Mills issued a revised cost realism and price reasonableness
analysis on December 16, 2016. She determined that both ERG's and Tetra
Tech's proposed costs were realistic for the work to be performed and
reflected a clear understanding of the requirements.  She further found the
proposed cost-plus-fixed-fee provided by each offeror to be fair and reasonable
to the government.  On December 16, 2016, SSO Licis determined that an
award to ERG presented "the best value to the government based on the higher
technical ration of the Quality Assurance Manager and the lower, reasonable
and realistic costs of ERG's proposal." AR 6789.  That same day, Tetra Tech
was notified that it was again unsuccessful.

DISCUSSION

The Tucker Act, as amended by the Administrative Dispute Resolution
Act, confers jurisdiction upon this court "to render judgment on an action by
an interested party objecting to a solicitation by a Federal agency for bids or
proposals for a proposed contract or to a proposed award or the award of a
contract or any alleged violation of statute or regulation in connection with a
procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). An
"interested party" is "an actual or prospective bidder or offeror whose direct
economic interest would be affected by the award of the contract or by failure
to award the contract." *Am. Fed'n of Gov't Emps. Local 1482 v. United States*,
258 F.3d 1294, 1302 (Fed. Cir. 2001).

In exercising our bid protest jurisdiction, we adhere to the standards set forth in section 706 of the Administrative Procedure Act ("APA"), which means that we will vacate an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2012). An agency's action would be considered "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Thus, the agency's action will be set aside if it lacks a rational basis or if it involves a prejudicial violation of procedure. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Because this contract was awarded based on "best value," the agency has greater discretion than if the contract were to be awarded on the basis of price alone. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (citing *E.W. Bliss Co. v United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)). "The greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious." *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980). Accordingly, this court's review should be "highly deferential" to the agency's determination. *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 726 (2008) (citing *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)).

Plaintiff takes issue with EPA's evaluations of both ERG's and Tetra Tech's proposals with regard to Key Personnel, Past Performance, and Corporate Experience. According to plaintiff, EPA's evaluations of ERG's and Tetra Tech's proposals were arbitrary and capricious because Tetra Tech's proposal objectively demonstrated superior technical qualifications for these three factors, yet EPA evaluated ERG's proposal as technically superior. Plaintiff argues that EPA conducted an improper technical evaluation of both offerors' proposals by (1) arbitrarily assigning adjectival ratings to ERG and Tetra Tech that did not correspond to the strengths and weaknesses identified in the record; (2) applying unstated evaluation criteria for the PL-4 Program Manager position; (3) relaxing the RFP's stated evaluation criteria; (4) ignoring that the Past Performance section of ERG's proposal did not meet the RFP's technical requirements for Past Performance; (5) disregarding ERG's lack of Corporate Experience; and (6) unreasonably evaluating ERG for its

Corporate Management and Corporate Technical Experience. Plaintiff contends that the agency's arbitrary and capricious actions resulted in prejudice to Tetra Tech because it had a substantial chance of receiving the award but for the Agency's flawed evaluation. Plaintiff requests that the court enter a permanent injunction enjoining the EPA from proceeding with the award to ERG.

I. Key Personnel

Regarding Key Personnel, plaintiff contends that ERG's PL-4 Program Manager was arbitrarily rated "Good" for her technical qualifications and "Outstanding" for her managerial qualifications.  First, Plaintiff argues that EPA's evaluation of the Program Manager position lacks a rational basis because EPA applied unstated evaluation criteria, namely, whether the offerors' proposed Program Managers demonstrated an innovative approach. Plaintiff notes that the word "innovation" is not included in the solicitation's evaluation criteria for the Program Manager position. Plaintiff contends that use of "innovation" could not be inferred from the stated evaluation criteria and that it was not subsumed within the stated criteria despite multiple appearances of the phrase within the PWS.  Plaintiff notes that four of the six times that "innovation" appears in the PWS it is not in the context of requiring the Program Manager to develop innovative approaches, but rather to compile innovative work done by others for the OWM program's benefit.  Plaintiff asserts that the remaining two mentions of "innovation" do not support a reasonable inference that innovation was subsumed within the evaluation criteria for the technical qualifications of the Program Manager, and that, if it was, it should be limited to experience relevant to the specific PWS sections in which "innovation" appears.

Plaintiff further believes that the TEP disparately evaluated the two offerors' proposals by giving [        ] credit for being innovative while overlooking how Tetra Tech demonstrated [           ] ability to innovate in its proposal.  Building off its argument that use of innovation, if allowed, should be limited, plaintiff asserts that [        ] lacked experience in the sections of the PWS that expressly require innovation, undermining the TEP's use of the criteria to bolster her rating.  Plaintiff contends that, unlike ERG, its Program Manager not only has experience in the sections of the PWS relevant to innovation but also that its proposal demonstrated [          ] ability to innovate in those areas while discussing that experience.  Specifically, Tetra Tech's proposal identifies numerous instances of [          ]

innovations—namely, his work as an author of Emerging Technologies for Wastewater Treatment and In-Plant Wet Weather Management, his role as project manager for the Water Environment Federation's Green Infrastructure Implementation Task Force involving a multi-year effort focusing on the integration of innovative green infrastructure practices, his management role in developing regulations to implement section 316(b) of the CWA, and his participation in developing a new wastewater treatment grant program. Plaintiff concludes that EPA improperly downgraded [          ] to a "Good" rating for technical experience based on the unstated criteria and EPA's disregard for relevant information in Tetra Tech's proposal.

Plaintiff further argues that EPA improperly relaxed the solicitation's evaluation criteria for the technical qualifications of ERG's Program Manager. Specifically, plaintiff asserts that ERG did not demonstrate that it had the relevant experience and expertise to handle the technical and scientific requirements of the PWS. Plaintiff also believes that the source selection determination improperly ignores ERG's weaknesses and contends—often relying on notes from individual TEP members—that EPA took part in a "pattern of whitewashing" throughout the drafting process that aimed to minimize those weaknesses. Pl.'s Mot. for J. on the AR 23. Plaintiff also points out that the revised TEP consensus report identified significant weaknesses in [          ] technical qualifications, including that she demonstrated "a misunderstanding of some key terms and a poor understanding of the program." AR 6490. According to plaintiff, these weaknesses could not have reasonably resulted in a "Good" rating, which is to be awarded to proposals that "indicate[] a thorough approach and understanding of the requirements." AR 166. Rather, plaintiff claims ERG's Program Manager deserved a score of "Marginal" for her technical qualifications, meaning that the proposal "has not demonstrated an adequate . . . understanding of the requirements." *Id*. In addition, plaintiff argues that [               ] should have been given a lower score for her managerial qualifications based on her lack of experience managing contracts of a similar size, type, and scope as the PWS.

In defendant's cross-motion, it argues that plaintiff's arguments regarding the EPA's evaluation of the offerors' Program Managers amount to nothing more than mere disagreements. Intervenor also argues that Tetra Tech's reliance on individual notes and earlier drafts of the consensus TEP report is inappropriate because the prior evaluations were superseded by the revised consensus TEP report and that initial individual ratings, in any event,

should be given little weight. Throughout their arguments, defendant and intervenor rely heavily on the highly deferential standard this court applies when reviewing decisions of procurement officials and argue that the record demonstrates that the EPA's decision was thoroughly considered and well-supported.

Defendant contends that the "Good" rating given to Tetra Tech's Program Manager's technical qualifications is supported by the record. To begin with, defendant argues that consideration of innovation and integration with new ideas was both expressly stated in the PWS and reasonably considered given that innovation is inherently necessary to the work to be performed. Thus, according to defendant, plaintiff has failed to show that EPA used a significantly different basis than the stated factors when evaluating Tetra Tech's proposal, and therefore innovation was correctly evaluated by the TEP. Defendant also believes that plaintiff's highlighting of instances in its proposal which show its capability for innovation merely constitute disagreement with the TEP's findings. Defendant points out that the TEP ultimately found that many of the projects outlined in the proposal "really demonstrated the technical expertise of others," AR 6514, and that "the proposal does not demonstrate this individual's technical ability for innovation or integration with new ideas." AR 6513. These findings, defendant argues, support EPA's decision to give [      ] technical qualifications a "Good" rating.

Defendant also argues that EPA reasonably assigned ERG's Program Manager a "Good" rating for her technical qualifications. According to defendant, the decision was reasonably made and within the TEP's discretion of how weaknesses should be weighed and whether strengths outweigh any weaknesses. Defendant argues that the TEP also properly found, by citing to specific portions of the proposal, that [      ] had considerable education, expertise, and experience related to the technical requirements of the PWS that would warrant the rating given. Moreover, defendant stands by EPA's decision to give [    ] an "Outstanding" rating for her managerial qualifications. Defendant argues that the solicitation left to the discretion of the TEP the determination of whether an offerors' prior contracts sufficiently covered the technical requirements of the PWS. Defendant goes on to argue that the TEP properly used this discretion in finding that the managerial experience offered by [        ] was similar to the size, type, and managerial scope of the contract contemplated by the PWS.

We begin with plaintiff's contention that EPA arbitrarily evaluated ERG's Program Manager because it applied "innovation and integration with new ideas" as an unstated evaluation criterion.  Generally speaking, an agency must evaluate an offeror's proposal  based on the criteria set out in the solicitation.  That said, we have also recognized that an agency still enjoys "great discretion in determining the scope of an evaluation factor.*" Forestry Surveys and Data v. United States*, 44 Fed. Cl. 493, 499 (1999).  "Indeed, it is well-settled that 'a solicitation need not identify each element to be considered by the agency during the course of the evaluation where such element is intrinsic to the stated factors.'" *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 387 (2003) (quoting *Analytical & Research Tech., Inc. v. United States*, 39 Fed. Cl. 34, 45 (1997).  Thus, "[w]hen weighing the merits of a proposal under a specific evaluation factor, an agency 'may consider all matters that offerors would reasonably have believed to be within the scope of the factor.'" *Forestry Surveys and Data*, 56 Fed. Cl. at 497 (quoting John Cibinic Jr. & Ralph C. Nash Jr., Formation of Government Contracts 830 (3rd ed. 1998)).

We hold that EPA properly considered the proposed Program Managers' ability to innovate while conducting its evaluation. To begin with, the solicitation directed the TEP to evaluate the Program Manager's demonstrated technical qualifications "with the type of technical requirements covered by the PWS." AR 164.  The PWS makes no less than six references to innovation.  While plaintiff is correct that several of these references require that the contractor compile examples of other's innovative work for the benefit of the OWM program rather than develop innovative approaches itself, these instances still show EPA's focus on innovation as an important consideration within the PWS.  Moreover, the PWS specifically calls for innovative solutions and ideas from the eventual awardee. Specifically, section 3.3.15 of the PWS provides that "[t]he contractor shall assess, analyze, and recommend innovative and efficient solutions for permitting wet weather point sources," and section 3.5 provides that "[t]he contractor shall provide support and technical assistance in the research and development of new, innovative permitting tools and approaches." AR 174, 178.  Further, we hold that the consideration of innovation should not be limited as plaintiff argues because it is inherent to the scientific and technical nature of the work contemplated in the solicitation.  For example, as intervenor points out, supporting the issuance of new regulations and developing new permits necessarily requires some element of innovation. We find that a reasonable offeror should have known

that EPA would take into account a Program Manager's capacity for innovation for the type of work solicited.

We also find plaintiff's disagreements with EPA's rating of [         ] technical qualifications as "Good" unavailing. The revised consensus TEP report states that Tetra Tech's proposal "does not demonstrate [                ] technical ability for innovation or integration with new ideas or critical issues." AR 6513. The report then lists four sections of the PWS as examples of areas to which its observation applies.[9] In essence, plaintiff responds to the report by pointing to portions of its proposal that it feels show [         ] ability for innovation. Plaintiff's arguments are a classic example of a disagreement with an agency's evaluation. We hold that plaintiff has not shown that EPA was unreasonable in assigning [         ] a "Good" rating for technical qualifications.

Similarly, we are not persuaded that [         ] receiving a "Good" rating for her technical qualifications was irrational. Plaintiff urges that [         ] does not have the requisite NPDES experience to receive such a score. Plaintiff discusses at great length previous drafts of the revised consensus TEP report and initial evaluations performed by individual TEP members that spoke to [         ] limited experience in this area. While not irrelevant, these earlier reports carry little weight in the face of the revised consensus TEP report. *See DM Petroleum Operations Co. v. United States*, 115 Fed. Cl. 305, 314 (2104) (mentioning that "initial individual ratings of [source evaluation board] members have 'little bearing on [a] protest' when the [source evaluation board] reaches a consensus rating") (quoting *Tech Sys., Inc. v. United States*, 98 Fed. Cl. 228, 247-48 (2011)). Intervenor is correct that a consensus evaluation process presumes that evaluators can and will change their minds. In fact, the "TEP procedures" provided to the TEP members on April 14, 2016, instruct the TEP chair to compile each member's individual analysis and ensure that the compiled documents are "displayed electronically during the meeting for the panel members and can be modified as the consensus meeting is conducted." AR 2219. Without more, we reject plaintiff's bare assertion that the change in the TEP's evaluations over time constituted a whitewash in order to award the contract to ERG.

---

[9] We note that one of the four sections, NPDES Permitting Support (PWS section 3.5), is a section that explicitly seeks the development of "new, innovative permitting tools and approaches." AR 178.

The revised consensus TEP report noted that [      ] was "lacking knowledge and expertise in . . . program specific areas." AR 6490.  The TEP went on to   conclude, however, that "her strengths outweighed the cited weaknesses in these areas." AR 6490. Plaintiff simply disagrees with the weight given to [           ] weaknesses by the TEP. Plaintiff has failed to show that EPA's evaluation of [            ] technical qualifications was irrational. Accordingly, we will not set aside EPA's evaluation.

## II. Past Performance

Plaintiff argues that EPA's past performance evaluation did not comply with the solicitation because it gave ERG a rating of "Substantial Confidence" without evaluating five contracts that were "similar in technical scope and complexity, size, and type to that which is anticipated in this solicitation." AR 164.  In fact, according to plaintiff, none of the contracts identified by ERG in its proposal were similar in size, type, scope, and complexity to the PWS. Plaintiff believes that EPA is not owed deference with respect to its determination of which contracts were appropriate to evaluate because the contracts chosen "were so dissimilar that they could not reasonably or rationally be considered as a relevant indicator of successful performance of the PWS." Pl.'s Resp. 19. In its motion, plaintiff included a four-page table that explained the reasons it felt the past performance contracts were not similar in technical scope and complexity, size and type to the solicitation. Plaintiff insists that, given ERG's lack of similar past performance, it should have been given a score of "Unknown Confidence (Neutral)" rather than the "Substantial Confidence" score that it received.

Defendant counters that EPA's Past Performance rating of ERG was reasonable and within EPA's discretion.  Again, defendant and intervenor cast plaintiff's arguments as mere disagreements with EPA's conclusions and note that the RFP left it to the discretion of the agency to determine whether the offered contract references were similar to that contemplated by the RFP. Intervenor further argues that Tetra Tech cannot show prejudice because its proposal would also fall victim to the narrow view of "similar" that it demands.  For example, intervenor argues that plaintiff "never explains what rule of interpretation would require EPA to reject an ERG contract[] worth $11 million as too dissimilar in size, but accept as similar Tetra Tech's $15 million reference." Int.'s Reply 12.

Plaintiff's primary objection with the "Substantial Confidence" rating given to ERG relates to the contracts that the TEP selected to evaluate in its revised consensus TEP report.  As with other technical factors, "[e]valuation of past performance is 'within the discretion of the contracting agency and will not be disturbed unless it is unreasonable or inconsistent with the terms of the solicitation or applicable statutes or regulations.'" *Fort Carson Support Servs. v. United States*, 71 Fed. Cl. 571 (2006) (quoting *Consol. Eng'g Servs. v. United States*, 64 Fed. Cl. 617, 637 (2005)).  We agree with defendant and intervenor that CO Mills acted within her discretion in selecting the contracts to be evaluated in order to determine Past Performance ratings for both offerors. CO Mills provided an explanation for the selection of each of the nine contracts evaluated for ERG.  She also received input from the TEP related to the TEP's perspective on the scope and complexity of the contracts identified in ERG's proposal.  Plaintiff asks us to substitute its narrow view of which contracts are "similar in technical scope and complexity, size, and type to that which is anticipated in [the] solicitation" for that of CO Mills (as further informed by the TEP). AR 164. We refuse to do so.  Plaintiff has failed to show that CO Mills abused her discretion in selecting the contracts to be evaluated or assigning ERG a Past Performance rating of "Substantial Confidence."

## III. Corporate Experience

Plaintiff takes issue with ERG's "Outstanding" rating for both Corporate Technical Experience and Corporate Management Experience. Specifically, for Corporate Technical Experience, plaintiff argues that the revised TEP report failed to evaluate or even mention whether contracts identified in ERG's proposal were of "similar size (as measured by dollar value and level-of-effort), contract type, and technical scope as that specified in [the] solicitation." AR 164. Plaintiff argues that had EPA done so, it would not have been able to give ERG an "Outstanding" rating because the contracts in its proposal were not reasonably similar.  Along the same lines, for Corporate Management Experience, plaintiff argues that EPA failed to examine individually whether ERG's proffered prior contracts were "of similar size (dollar amount), type (CPFF, multi task), and technical complexity and scope to that specified in [the] solicitation." AR 164.  Rather, plaintiff argues that EPA simply copied and pasted from ERG's proposal that it [

] *Compare* AR 6505 *with* AR 5122.  Again, plaintiff believes that had EPA examined the individual contracts, it would have found that the contracts were not sufficiently similar

and been unable to rate ERG's Corporate Management Experience as "Outstanding."

Plaintiff further argues that it was unreasonably inconsistent for EPA to give ERG an "Outstanding" rating for Corporate Management Experience, while also finding that ERG's one weakness was its limited management experience with "amending, developing, and implementing NPDES permits, other than Vessel General Permit." AR 6505. Plaintiff argues that this is especially significant because the TEP, while discussing Past Performance, identified permitting activities as "the cornerstone of the PWS." AR 6498. Plaintiff asserts that EPA's "Outstanding" rating was irrational because the one identified weakness is such an important aspect of the contract contemplated in the solicitation.

Defendant again argues that plaintiff's concerns with respect to the Corporate Experience ratings are nothing more than plaintiff's disagreement with EPA's evaluation. Defendant asserts that, as with Past Performance, EPA has discretion to determine what constituted a similar contract. Defendant further argues that EPA considered ERG's experience in "fulfilling the technical requirements of contracts of a similar size, type and scope to that contemplated by the solicitation because when discussing ERG's experience in relation to the PWS categories, the EPA cited to sections in ERG's proposal documenting ERG's work on relevant contracts." Def.'s Mot. for J. on the AR 46.

We hold that the TEP acted within its discretion when it selected contracts to evaluate in order to judge both ERG's and Tetra Tech's Corporate Technical and Managerial Experience. We will begin with the similar arguments plaintiff makes for both Corporate Technical and Corporate Management Experience—namely, that the TEP failed to properly examine whether the contracts it was evaluating for these factors conformed to the description of acceptable contract references from the solicitation. These arguments, again, amount to nothing more than plaintiff's disagreement with EPA's choice of relevant contract references. Moreover, for the TEP's evaluation of ERG's Corporate Technical Experience, the TEP provided a lengthy list of strengths, organized by PWS category, that ERG demonstrated. The TEP ultimately concluded that ERG's "overall package is outstanding and seems to provide some opportunities for the NPDES program to expand and/or get a fresh perspective on some parts of the program." AR 6504. Plaintiff has

29

not shown the TEP's evaluation of ERG's Corporate Technical Experience to be arbitrary and capricious or an abuse of its discretion.

Similarly, with respect to the contract references chosen by the TEP to evaluate ERG's Corporate Management Experience, we hold that EPA acted within its discretion.  Again, the solicitation left the determination of what contracts were sufficiently similar to the EPA's discretion. Plaintiff has not shown that the TEP's selection of contract references was irrational.  In the revised consensus TEP report, the TEP spoke generally when discussing both ERG's and Tetra Tech's Corporate Management Experience. The TEP found that ERG's proposal demonstrated a "wide variety of successfully managed projects, well within the size, scope and complexity of [the] PWS." AR 6505-06.

The TEP acknowledged weaknesses in both offeror's proposals for this category and rated both offeror's Corporate Management Experience as "Outstanding."  Plaintiff's argument that the weakness the TEP identified for ERG does not rationally comport with an "Outstanding" rating for this factor is unavailing.  As discussed above, agency's have broad discretion to weigh an offeror's strengths and weaknesses as it sees fit.  While reasonable minds may differ as to ERG's Corporate Management Experience rating, plaintiff has failed to show that EPA acted irrationally.  Thus we hold that the TEP's "Outstanding" rating for ERG's Corporate Management Experience was reasonable and supported by the record.  Moreover, as intervenor argues, plaintiff fails to show how it was prejudiced by the alleged relaxation of the evaluation criteria because, if such a relaxation occurred, it benefitted along with ERG.

We have considered plaintiff's other arguments in support of its motion for judgment on the administrative record and find them unavailing.

CONCLUSION

Plaintiff has failed to show success on the merits. Thus we need not consider the other factors for injunctive relief. Accordingly, we deny plaintiff's motion for judgment on the administrative record and grant defendant's and intervenor's cross-motions for judgment on the administrative record. The Clerk's office is directed to enter judgment for defendant. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge